United States District Court
Southern District of Texas
**ENTERED**
March 21, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOAQUIN ALVAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00222 |
| | § | |
| REGIONAL DIRECTOR, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO RETAIN CASE AND DISMISS CERTAIN CLAIMS**

Plaintiff Joaquin Alvarez, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) an Eighth Amendment excessive force claim for pushing and/or shoving against John Doe Transportation Officer No. 1 in his individual capacity; and (2) an Eighth Amendment deliberate indifference claim, based on the conditions of Plaintiff's confinement in administrative segregation, against Warden Sifuentes in his individual capacity.  Accordingly, it is respectfully recommended that these claims be **RETAINED.**  The undersigned will order service on these defendants.

For the reasons set forth below, the undersigned respectfully recommends further that: (1) Plaintiff's claim for money damages against Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claim seeking injunctive relief against Warden Sifuentes in his official capacity be **DISMISSED with prejudice** as moot; and (3) Plaintiff's claims against the remaining Defendants be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the Hughes Unit in Gatesville, Texas. Plaintiff's allegations in this case arise in connection with his previous housing assignment at the McConnell Unit in Beeville, Texas.

Plaintiff sues the following defendants in this action: (1) TDCJ Regional Director, name unknown; (2) Warden Sifuentes, former warden at the McConnell Unit; (3) John Doe Transportation Officer No. 1; and (4) Richard Roe Transportation Officer No. 2.

(D.E. 20, pp. 1, 3).[1]  Plaintiff generally claims that Defendants violated his Eighth Amendment rights.  Plaintiff seeks to sue each defendant in his individual and official capacity.

On January 27, 2022, the undersigned conducted a *Spears*[2] hearing where Plaintiff was given an opportunity to explain his claims.  The following representations were made either in Plaintiff's Amended Complaint (D.E. 20) or at the *Spears* hearing.  At the time of the *Spears* hearing, Plaintiff was 47 years old.  He is 5'6" tall and weighs 180 pounds. (D.E. 22, pp. 2-3).  Plaintiff arrived at the McConnell Unit on February 12, 2019, where he was housed for the next thirty days.  (D.E. 20, pp. 3-4).  Plaintiff was then transferred for an overnight stay at the Darrington Unit before arriving at the Hughes Unit on March 18, 2019.  (D.E. 20, pp. 4-5).

Plaintiff was housed for thirty days in the McConnell Unit's administrative segregation (12 Building A Pod).  (D.E. 20, p. 5).  Plaintiff described the conditions of his confinement in administrative segregation as follows: (1) the sink had no running water; (2) Plaintiff was provided with no cleaning supplies; (3) the walls and floors were filthy; and (4) mice, rats, and roaches were in Plaintiff's cell every night.  (D.E. 20, p. 6).

---

[1] In his original complaint, Plaintiff identified the second unknown transportation officer as "John  Doe Transportation No. 2."  (D.E. 1, pp. 1, 3).  Plaintiff listed this defendant in the Amended Complaint as "Richard Roe Transportation Officer No. 2."  (D.E. 20, p. 1, 3).

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff contracted strep throat during his stay in administrative segregation. (D.E. 20, pp. 7, 10). Plaintiff was treated for strep throat on February 27, 2019 at the unit's medical facility. (D.E. 20, p. 10). Plaintiff did not suffer any other injuries in connection with his stay in administrative segregation at the McConnell Unit. (D.E. 20, p. 8).

Plaintiff complained to Warden Sifuentes about the conditions of his confinement in administrative segregation. (D.E. 20, pp. 10-11). Warden Sifuentes responded that Plaintiff belonged in his assigned cell. (D.E. 20, p. 11). Plaintiff holds Warden Sifuentes and the Assistant Regional Director responsible for the conditions of his confinement at the McConnell Unit. (D.E. 20, p. 12). Plaintiff further complain that Warden Sifuentes mixed transient prisoners like Plaintiff in administrative segregation with inmates having disciplinary issues. (D.E. 20, pp. 22-23).

On March 15, 2019, Plaintiff was scheduled to appear in the San Antonio federal courthouse in connection with a separate prisoner civil rights case. (D.E. 20, p. 12). Plaintiff was placed after breakfast in an attorney phone booth, which is a holding cell. (D.E. 20, p. 12). The transportation officers arrived at 4:30 a.m. and placed Plaintiff in the back of the transportation van. (D.E. 20, p. 12). The van left the McConnell Unit, and his trip to the San Antonio federal courthouse took about two and a half hours. (D.E. 20, pp. 12-13).

For three days from March 15, 2019 through March 17, 2019, Plaintiff took round trips to the San Antonio federal courthouse for his civil rights case. (D.E. 20, p. 13).

Two male transportation officers accompanied him in the van on every trip.  (D.E. 20, p. 14).  On every trip, the officers placed shackles on Plaintiff from his legs to his waist.  (D.E. 20, pp. 14-15).  The officers also placed a device called a lock box on Plaintiff's wrists which kept Plaintiff's hand in a twisted position the whole ride.  (D.E. 20, pp. 14-15).

Plaintiff described his pain level on the road trips to the courthouse as a five on a scale of one to ten.  (D.E. 20, p. 16).  During the ride to the courthouse, Plaintiff was not provided with anything to eat or drink.  (D.E. 20, p. 15).  Plaintiff also was not allowed to go to the bathroom.  (D.E. 20, p. 15).

When Plaintiff arrived at the San Antonio federal courthouse, he complained to the transportation officer about his treatment on the van.  (D.E. 20, p. 16).  The officers responded that "it happens every day, it's normal routine."  (D.E. 20, p. 16).  While Plaintiff was inside the federal courthouse, the transportation officers removed the lock box from Plaintiff's wrists but left the shackles on Plaintiff.  (D.E. 20, p. 18).  The transportation officers allowed Plaintiff to use the bathroom in the federal courthouse.  (D.E. 20, p. 19).  While not eating anything at the federal courthouse, Plaintiff drank water from the bathroom's sink.  (D.E. 20, p. 21).

On each day of his trip to the San Antonio federal courthouse, the same transportation officers accompanied Plaintiff for his ride back to the McConnell Unit.  (D.E. 20, p. 18).  On one of his return trips to the McConnell Unit, a transportation officer pushed Plaintiff forward causing him to land on his stomach on top of his wrists.

(D.E. 20, p. 16).  During Plaintiff's return trips, Plaintiff was shackled in the same way with the lock box placed on his wrists.  (D.E. 20, p. 19).  Plaintiff was not provided with anything to eat or drink.  (D.E. 20, p. 19).  Plaintiff complained to the transportation officers about not having anything to eat or drink.  (D.E. 20, p. 20).  They responded that some unknown person would eventually feed Plaintiff.  (D.E. 20, p. 20).  Plaintiff also was not allowed to go to the bathroom.  (D.E. 20, p. 19-20).  Plaintiff described his pain level on the road trips back to the McConnell Unit as a three on a scale of one to ten. (D.E. 20, p. 20).

Plaintiff testified that he only was physical injury he suffered when the transportation officer pushed him which caused Plaintiff to land on and injure his wrist. (D.E. 20, p. 21). Plaintiff was later seen at the McConnell Unit's medical department for this wrist injury.  (D.E. 20, p. 16).

Plaintiff seeks to hold the unknown TDCJ Regional Director responsible as the policy-maker and enforcer of the five-hour round trip van rides.  (D.E. 20, p. 22).  Lastly, Plaintiff states that the treatment he received in connection with his van rides discouraged him from continuing his lawsuit in San Antonio.  (D.E. 20, pp. 24-25).  Plaintiff seeks monetary relief and injunctive relief in the form of policy change.  (D.E. 20, p. 23-24).

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal

conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A. Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As

such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Defendants in their official capacities for money damages, such claim is barred by the Eleventh Amendment.  Thus, it is respectfully recommended that Plaintiff's claim for money damages against Defendants in their official capacity be dismissed.

### B.  Excessive Force

Inmates have a constitutional right to be free from the use of excessive force.  *See Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006).  To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992).  The five factors to be considered are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a

9 / 24

forceful response.  *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999) (citing *Hudson*, 962 F.3d at 523).

A prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4.  In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 40.  The Supreme Court explained that "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citations omitted).

"[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir.  2013) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996)). *See also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is ... subjective -- it is defined entirely by the context in which the injury arises."). Courts, therefore, may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such a

wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

### *(1) Placement in Shackles and Lockbox*

Liberally construed, Plaintiff claims that the transportation officers used excessive force during his trips to and from the San Antonio federal courthouse by shackling him and placing his hands and wrists in a painful lock box.  The Fifth Circuit has held, however, that simply placing handcuffs or shackles on an offender too tightly alone does not amount to excessive force.  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Minor or incidental injuries associated with the use of handcuffs or shackles are considered *de minimis* and do not give rise to a constitutional claim of excessive force. *See Juarez v. Pizana*, No. 3:17-CV-368, 2018 WL 3846039, at *6 (W.D. Tex. June 29, 2018) (citing *Freeman*, 483 F.3d 404, 417 (5th Cir.  2007)).  *See also Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir.  2005) (concluding that "acute contusions of the wrist" and "psychological injury from being handcuffed were *de minimis* and insufficient to amount to excessive force).

Plaintiff testified at the *Spears* hearing that, while the shackles and lock box caused him pain, he did suffer any physical injuries as a result.  (D.E. 20, pp. 14-16, 21). Because Plaintiff fails to allege that he suffered any injury, much less a *de minimis* injury, the undersigned respectfully recommends that Plaintiff's excessive force claim arising from the use of shackles and the lock box on him be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(2) Push/Shove*

Plaintiff alleges that, during one one of his return trips to the McConnell Unit, a transportation officer pushed Plaintiff forward causing him to land on his stomach on top of his wrists.  (D.E. 20, p. 16).  The Supreme Court recognizes that inmates generally fail to state an actionable excessive force claim when they complain "of a push or shove that causes no discernible injury." *Wilkins*, 559 U.S. at 38.

In this case, Plaintiff's allegations indicate that the transportation officer's push caused him to suffer an injury to his wrists requiring a visit to the McConnell Unit's medical department.  (D.E. 20, p. 16).  Plaintiff's allegations are sufficient at this point to state a excessive force claim against the transportation officer responsible for pushing him. Accordingly, the undersigned respectfully recommends that this excessive force claim be retained against John Doe Transportation Officer No. 1.[3]

### C.  Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting

---

[3] Plaintiff does not indicate whether he was pushed by John Doe Transportation Officer No. 1 or Richard Roe Transportation Officer No. 2.  Regardless, the Court may require Plaintiff to provide information at a later date to identify the transportation officer responsible for the push.

*Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).  Prison officials are required to must provide humane conditions of confinement and ensure that inmates receive adequate food, water, clothing, shelter, and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Flores v. TDCJ Transitorial Planning Dept.*, No. 2:14-CV-283, 2015 WL 10436114, at *2 (S.D. Tex. Nov. 17, 2015).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety.  *Farmer*, 511 U.S. at 834.  The test for deliberate indifference has both an objective and subjective prong.  *Id.* at 839.  Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).  The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'"

*Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)).  *See also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk").  The Supreme Court further explains that "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference.  *Farmer*, 511 U.S. at 838.

In accessing prisoner allegations of unconstitutional conditions of confinement, the Supreme Court has noted that some complained-of conditions amount to no more than "a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright,* 430 U.S. 651, 674 (1977).  Moreover, the Court has further explained that it is necessary to consider the duration of the plaintiff's exposure to the complained-of condition. *See Hutto v. Finney,* 437 U.S. 678, 686–87 (1978).

Following this guidance, the Fifth Circuit Court of Appeals and other circuit courts have recognized that a filthy cell may be tolerable and not an Eighth Amendment violation for a few days but intolerably cruel and unusual for a time period of weeks or months.  *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hutto*, 437 U.S. at 686-87); *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989) (citing *Hutto*, 437 U.S. at 687); *see also White v. Nix,* 7 F.3d 120, 121 (8th Cir.1993) (a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation due to "relative brevity" of his stay); *Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th

Cir. 1988) (filthy, roach-infested cell for five days does not amount to constitutional violation).  However, there is no exact time calculation, and with certain conditions, or combination of conditions, the short duration of the exposure does not eliminate the violation.  *See e.g., McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (finding an Eighth Amendment violation where a prisoner was forced to live in a feces-covered cell for three days); *LaReau v. MacDougal*, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner's Eighth Amendment rights were violated where he was forced to "live, eat, and perhaps sleep in close confines with his own human waste" for five days).

### *(1) Conditions in Administrative Segregation*

Liberally construed, Plaintiff claims that Warden Sifuentes and the unknown Regional Director acted with deliberate indifference to Plaintiff's health with respect to his thirty-day stay in administrative segregation.  Plaintiff alleges that: (1) the sink in his cell had no running water; (2) Plaintiff was provided with no cleaning supplies; (3) the walls and floors were filthy; and (4) mice, rats, and roaches were in Plaintiff's cell every night.  (D.E. 20, p. 6).  Plaintiff further alleges that he contracted strep throat two weeks after being confined in the unsanitary cell, which required medical treatment.  (D.E. 20, pp. 7, 10).

### Warden Sifuentes

According to Plaintiff, Warden Sifuentes assigned Plaintiff to his cell in administrative segregation.  (D.E. 20, pp. 22-23).  Plaintiff alleges that, during his 30-day

stay in administrative segregation, he complained to Warden Sifuentes about the unsanitary conditions of his cell and that Warden Sifuentes merely acknowledged to Plaintiff that he belonged in his assigned cell.  (D.E. 20, pp. 10-11).

Plaintiff's allegations, accepted as true, indicate that Warden Sifuentes was responsible for Plaintiff's assignment to an unsanitary cell for thirty days and that he ignored Plaintiff's complaints about the significant unsanitary conditions of his cell in which Plaintiff ultimately became sick.  Plaintiff, therefore, has adequately alleged that Warden Sifuentes knew of and disregarded an excessive risk to Plaintiff's health by housing him in an unsanitary cell for thirty days.  *See Alexander v. Texas Dept. of Criminal Justice*, 951 F.3d 236, 241 (5th Cir. 2020); *Davis*, 157 F.3d at 1006.

Plaintiff seeks both monetary damages and injunctive relief against Warden Sifuentes. Plaintiff, however, is no longer confined at the McConnell Unit as he has been transferred to the Hughes Unit.  Plaintiff's claim for injunctive relief based on the conditions of confinement at the McConnell Unit, however, has been rendered moot upon his transfer to another facility.  *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)).  *See also Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (requests for injunctive and declaratory relief become moot when inmate is transferred to another facility). Furthermore, the possibility of Plaintiff's return to the McConnell Unit is much too speculative to warrant relief.  *Smith*, 281 F. App'x at 282.

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim based on his stay in unsanitary conditions in administrative segregation, be: (1) retained against Warden Sifuentes in his individual capacity for monetary relief; and (2) dismissed with prejudice against Warden Sifuentes in his official capacity for injunctive relief as moot.

### Unknown Regional Director

Plaintiff alleges that the unknown Regional Director also was responsible for Plaintiff's unconstitutional conditions of confinement in administrative segregation. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Plaintiff attempts to sue the unknown Regional Director in his supervisory capacity. He alleges nothing in his Amended Complaint or testimony at the *Spears* hearing to suggest that the Regional Director had any personal involvement with regard to the decision to place Plaintiff in the McConnell Unit's administrative

segregation or was otherwise responsible for the unsanitary conditions of Plaintiff's confinement.  Plaintiff further alleges nothing to indicate that the unknown Regional Director implemented any policies that resulted in Plaintiff's injuries in administrative segregation.  The undersigned respectfully recommends, therefore, that Plaintiff's deliberate indifference claim against the unknown Regional Director be dismissed with prejudice for failure to state a claim.

### *(2) Plaintiff's Round-Trip Van Rides*

### Transportation Officers

Plaintiff claims that, during the course of his van rides to and from the San Antonio federal courthouse, the transportation officers acted with deliberate indifference to his health by denying him food, water, and  bathroom breaks.  (D.E. 20, pp. 15, 19-20).  According to Plaintiff, each van ride took about two and a half hours.  (D.E. 20, pp. 12-13).  Plaintiff's allegations further reflect that the transportation officers allowed Plaintiff to go to the bathroom at the San Antonio federal courthouse where he was able to drink some water.  (D.E. 20, pp. 19-21).

Plaintiff's allegations reflect that he spent a relatively short period of time during the van ride without access to water, food, or the bathroom.  Plaintiff's predicament is distinguishable from facts presented in *Hope v. Pelzer*, 536 U.S. 730 (2002).  In *Hope*, the prisoner was handcuffed to a hitching post, shackled in leg irons, and left shirtless in direct sunlight without water or a bathroom for seven hours straight.  *Id.* at 734-35.  The

Supreme Court determined that such deprivations, including the denial of a bathroom break for seven hours, created a situation of "particular discomfort and humiliation" that implicated the Eight Amendment. *Id.* at 738.

The undersigned recognizes that the transportation officers could have graciously provided Plaintiff with food, water, and/or a bathroom break during his two and a half hour trips to and from the San Antonio federal courthouse. Nevertheless, in contrast to the factual scenario presented in *Hope*, Plaintiff's allegations fail to indicate that he suffered more than a *de minimis* level of imposition or otherwise to amount to an Eighth Amendment violation. *See Pierron v. L.P.D.C.*, No. 16-01746, 2017 WL 4990551, at *3 (E.D. La. Feb. 9, 2017) (concluding that prisoner's allegations that he was held in a segregation cell for over 24 hours without water to drink failed to state a deliberate indifference claim); *Garcia v. Currie*, No. 2:13-CV-226, 2014 WL 7157430, *9-11 (S.D. Tex. Dec. 15, 2014) (finding no Eighth Amendment violation where prisoner was held in a dry cell for 44 hours without a mattress, blanket, proper food, water and necessary hygiene materials).

Furthermore, while Plaintiff complained to the transportation officers during the van rides, Plaintiff alleges no facts to indicate that: (1) the officers were aware of Plaintiff being in physical discomfort due to the lack of access to food, water, and/or a bathroom; or (2) he was suffered from an injury or illness as a result of this lack of access. Plaintiff's allegations, therefore, fail to suggest that the transportation officers were aware of an excessive risk to Plaintiff's health and then consciously disregarded that risk.

Plaintiff's allegations, at most, reflect that the conduct of the transportation officers amounted to a negligent response to a risk of serious harm to Plaintiff.  *See Dyer*, 964 F.3d at 381.

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against the transportation officers, arising from the van rides to and from the San Antonio federal courthouse, be dismissed as frivolous and/or for failure to state a claim for relief.

**Unknown Regional Director**

Plaintiff claims that the unknown TDCJ Regional Director, in his supervisory capacity, acted with deliberate indifference to Plaintiff's health as the policy-maker and enforcer of daily five-hour van rides.  (D.E. 20, p. 22).  Plaintiff offers only conclusory allegations regarding the existence of a TDCJ policy permitting transportation officers not to allow inmates access to food, water, or bathrooms breaks while being transported by van.  Furthermore, in the absence of an underlying claim of deliberate indifference related to his round-trip van rides, Plaintiff fails to indicate that any such policy is unconstitutional or otherwise the cause of Plaintiff's injuries.  *See Swallow v. Gonzalez*, No. H-20-2232, 2021 WL 5567306, at *3-4 (S.D. Tex. Nov. 29, 2021).  *See also Curtis v. Peterson*, No. 5:20-CV-264, 2021 WL 3044169, at *6 (N.D. Tex. 2021) (recognizing that an inmate cannot state a § 1983 claim for supervisory liability where he fails to state an underlying constitutional claim).

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against the unknown Regional Director, arising from the implementation and enforcement of a policy for prisoner van rides, be dismissed as frivolous and/or for failure to state a claim for relief.

### D. Denial of Access to Courts

Prisoners have a constitutionally protected right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis*, 518 U.S. at 356.  *See also Jones*, 188 F.3d at 325 (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts.  *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999).  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts.  *Lewis*, 518 U.S. at 349.  In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial.  *See Lewis*, 518 U.S. at 356.  He must show "that his position as a

litigant was prejudiced" as a direct result of the denial of access.  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Plaintiff claims that Defendants violated his First Amendment right to access the courts.  He alleges that the treatment he received in connection with the van rides discouraged him from continuing his lawsuit in San Antonio.  (D.E. 20, pp. 24-25).  Plaintiff, however, provides no specific allegations to indicate how his treatment in the van caused him to lose an actionable or nonfrivolous claim in the San Antonio case or prevented him from presenting a nonfrivolous claim.  Plaintiff otherwise fails to indicate how he suffered an actual injury with respect to either his San Antonio case or any other action seeking to challenge the conditions of his confinement.  Indeed, the filing of this action belies any suggestion that Defendants have denied Plaintiff meaningful access to the courts.

Accordingly, because he fails to allege an actual injury, the undersigned respectfully recommends that Plaintiff's First Amendment claim against Defendants for denial of access to the courts be dismissed as frivolous and/or for failure to state a claim for relief.

## V.    RECOMMENDATION

For the reasons stated above and for purposes of §§ 1915A and 1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN** Plaintiff's: (1) Eighth Amendment excessive force claim for pushing and/or shoving against John Doe

Transportation Officer No. 1 in his individual capacity; and (2) Eighth Amendment deliberate indifference claim, based on the conditions of Plaintiff's confinement in administrative segregation, against Warden Sifuentes in his individual capacity.  The undersigned will order service as to these defendants by separate order.

The undersigned further recommends that: (1) Plaintiff's claim for money damages against Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claim seeking injunctive relief against Warden Sifuentes in his official capacity be **DISMISSED with prejudice** as moot; and (3) Plaintiff's claims  against the remaining **Defendants** be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully recommended on March 21, 2022.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).